IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ESAD BABAHMETOVIC,

     Appellant,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

v.

CASE NO. 1D14-2986

SCAN DESIGN FLORIDA INC/
ZENITH INSURANCE
COMPANY,

     Appellees.

_____/

Opinion filed May 1, 2015.

An appeal from an order of the Judge of Compensation Claims.
Ellen H. Lorenzen, Judge.

Date of Accident: October 9, 2013.

Michael J. Winer of the Law Office of Michael J. Winer, P.A., Tampa, for Appellant.

William H. Rogner of Hurley, Rogner, Miller, Cox, Waranch & Westcott, P.A., Winter Park, for Appellees.

PER CURIAM.

     In this workers' compensation case, Claimant appeals an order of the Judge

of Compensation Claims (JCC) denying him a one-time change in authorized

treating physician, as permitted by section 440.13(2)(f), Florida Statutes (2013). For the reasons set forth herein, we reverse the ruling.

**Background**

Claimant lifted a heavy box at work on October 9, 2013. His low back hurt, so the Employer/Carrier (E/C) sent him to Fast Track Urgent Care, and authorized Fast Track to treat him. The provider at Fast Track diagnosed radiculitis, and checked the boxes on a Uniform Medical Treatment Status Reporting Form (Form DWC-25) that indicate the "injury/illness for which treatment is sought" was "work-related." Fast Track also referred Claimant to Dr. Delgado, who first saw Claimant on November 15, 2013. Dr. Delgado concluded Claimant had both a resolving lumbar muscle sprain and, as a condition preexisting the date of the work accident, degenerative disk disease. Dr. Delgado checked the same "work-related" boxes on his DWC-25, but the same day sent a letter to the E/C indicating the cause "regarding the lumbar spine" was 60% the preexisting condition, and only 40% the "workplace injury."

On November 27, 2013, the E/C issued a Notice of Denial (Form DWC-12) stating, under the heading "denied benefits," "total claim denied," and, under the heading "reason for denial of benefits," that the "industrial accident" is not the major contributing cause (MCC) of the need for treatment. Both parties agree that this form was intended to be a denial of compensability – that is, a statement that there was

2

never a compensable injury here.[1] The E/C takes the position that it was permitted to deny compensability in its entirety at this point – even after having authorized treatment – because it did so "within 120 days after the initial provision of benefits or payment of compensation," as permitted under section 440.20(4), Florida Statutes (2013), conventionally known as the "120-day rule." That rule "allows the carrier to postpone the decision to deny any obligation to pay benefits for up to 120 days while it conducts an investigation, provided it pays the requested benefits for which it is undertaking the period of investigation." N. River Ins. Co. v. Wuelling, 683 So. 2d 1090, 1092 (Fla. 1st DCA 1996). "If, at the end of 120 days, the carrier does not deny compensability, it loses its right to deny." Id.

### The instant claim

Despite the Notice of Denial, Claimant asked for a one-time change in authorized treating physician. The E/C denied the one-time change, giving the same reasoning given in the Notice of Denial: that the industrial accident is not the MCC of the need for treatment. When the matter came before the JCC, the parties asked the JCC to consider whether the work accident was the MCC of, not only the need for treatment, but also the "injury" – in other words, to determine compensability –

---

[1] The parties agreed to this, even though notices of denial are not necessarily denials of compensability but are required for denial of any benefit, see Florida Administrative Code 69L-3.012(1), and even though the "reason" on the form does not, standing alone, render an injury non-compensable.

and also asked the JCC to consider whether Claimant was entitled to the one-time change despite the E/C's denial of compensability – in other words, whether a claimant can receive a one-time change where there was never a compensable injury.

The JCC drew several conclusions. Regarding the 120-day rule, the JCC concluded that, as a factual matter, the E/C's denial of compensability was timely, but, as a legal matter, denial of compensability under the 120-day rule did not itself foreclose the right to a one-time change. Regarding compensability, the JCC stated, "[t]here must first be a compensable accident and injury before an employee is entitled to any benefit allowed in Chapter 440" – thus rejecting Claimant's argument that he is entitled to a one-time change without first having to prove he had suffered a compensable injury of any sort. The JCC found that "Dr. Delgado identified an injury from the accident (a sprain) as well as a pre-existing condition (degenerative disc disease) which *combined* to produce the potential need for medical care" (emphasis added), and that Dr. Delgado opined the sprain was less than half of the cause of the "injury and need for care." The JCC then found both that "the accident was not the [MCC] of the injury" and that "the accident was not the [MCC] of claimant's need for medical care." Based on all of this, the JCC denied the one-time change.

**Analysis**

4

The JCC is correct that "[t]here must first be a compensable accident and injury before an employee is entitled to any benefit allowed in Chapter 440" – with one single exception: an advance payment under section 440.20(12), Florida Statutes. See Lopez v. Allied Aerofoam/Specialty Risk Servs., 48 So. 3d 888, 889 (Fla. 1st DCA 2010). But the JCC erred in not recognizing the existence of a compensable injury in this case. This error came about by the JCC's conflating the existence and cause of the *injury* – compensability – with the existence and cause of the *need for treatment*. Compensability is a concept used to convey the idea that the Florida Workers' Compensation Law applies; it requires the presence of certain elements described throughout chapter 440 by terms of art such as *accident*, *injury*, *arising out of work performed in the course and the scope of employment*. See generally Checkers Rest. v. Wiethoff, 925 So. 2d 348, 350 (Fla. 1st DCA 2006) (en banc) (explaining concept of compensability as "the occurrence of an industrial accident resulting in injury").

Causation, in workers' compensation, is established by MCC, and MCC is a concept that can potentially apply at two different stages of a determination of entitlement to benefits: Work must be the MCC of a compensable injury, and also – where (as here) there is a preexisting condition – the compensable injury must be the MCC of the need for treatment.[2] Compare § 440.09(1), Fla. Stat. (2013) (requiring

_____

[2] This is the rationale underlying case law holding that "[o]nce compensability is

5

employer to pay compensation or furnish benefits if employee suffers accidental compensable injury "arising out of work performed in the course and the scope of employment"), and § 440.02(36), Fla. Stat. (2013) (defining "arising out of" by stating that injury "arises out of employment if work performed in the course and scope of employment is the major contributing cause of the injury"), with § 440.09(1)(b), Fla. Stat. (2013) (providing that, if compensable work injury "combines with a preexisting condition to cause or prolong disability or need for treatment," employer need provide compensation or benefits only to extent injury "is and remains more than 50 percent responsible for the injury as compared to all other causes combined and thereafter remains the major contributing cause of the disability or need for treatment"). Only the first of these MCC analyses factors into a determination of compensability of the original injury.

Here, the JCC found the sprain (the workplace injury) and the degenerative disk disease combined to produce the need for treatment. But such facts do not preclude compensability – they merely implicate the possible availability of particular medical and indemnity benefits. See, e.g., § 440.15(5)(b), Fla. Stat. (2013)

---

established, an E/C can no longer contest that the accident is the MCC of the injuries at issue. It can only contest the connection between a claimant's need for specific treatment or benefits, and the industrial accident." Engler v. Am. Friends of Hebrew Univ., 18 So. 3d 613, 614 (Fla. 1st DCA 2009); see also City of Pembroke Pines v. Ortagus, 50 So. 3d 31, 32 (Fla. 1st DCA 2010) (holding E/C must pay for treatment as long as compensable condition remains MCC of need for treatment).

("If a compensable injury, disability, or need for medical care, or any portion thereof, is a result of aggravation or acceleration of a preexisting condition, or is the result of merger with a preexisting condition, only the disabilities and medical treatment associated with such compensable injury shall be payable under this chapter . . . ."). On the facts present in this case, it was not disputed that the sprain otherwise met the requirements of compensability (it occurred by accident, it resulted in injury (the sprain), it arose out of and in the course and the scope of employment, *et alia*). Given these facts, the JCC should not have applied an MCC analysis to determine the existence of a compensable injury, because there is no evidence (nor allegation) that the *sprain* was *caused by* degenerative disk disease or anything other than work.

The E/C also denied compensability in reliance on the 120-day rule, but did not provide written notice to Claimant of its intention to rely on that rule, as the rule requires:

> Upon commencement of payment as required under subsection (2) or s. 440.192(8), the carrier shall provide written notice to the employee that it has elected to pay the claim pending further investigation, and that it will advise the employee of claim acceptance or denial within 120 days.

§ 440.20(4), Fla. Stat. (2013). The pay-and-investigate period begins at "the initial provision of compensation or benefits," which the statute defines as "the first installment of compensation or benefits to be paid by the carrier under subsection (2) or pursuant to a petition for benefits under s. 440.192(8)." Id. Yet an

7

employer/carrier nonetheless must "elect" to rely on the rule, as both the rule itself and case law indicate. See id.; see also § 440.192(8), Fla. Stat. (2013) ("A carrier that does not deny compensability *__in accordance with s. 440.20(4)__* is deemed to have accepted the employee's injuries as compensable . . . ." (emphasis added)); Bynum Transp. v. Snyder, 765 So. 2d 752, 754 (Fla. 1st DCA 2000) ("When an E/C becomes aware that a claimant had medical needs, it should either pay for them, pay and investigate under section 440.20(4), or deny compensability."). We now hold that an employer/carrier who pays yet does not provide written notice "[u]pon commencement of payment" cannot avail itself of the 120-day rule to deny compensability, because it has elected to "pay" rather than to "pay and investigate." It follows that, here, the E/C elected to "pay," and thus waived any right to deny compensability of the original workplace injury under the 120-day rule.

Because Claimant suffered a compensable injury and received treatment therefor, he is entitled to a one-time change in treating physician as "an absolute right" if he made a written request for such during the course of treatment. Providence Prop. & Cas. v. Wilson, 990 So. 2d 1224, 1225 (Fla. 1st DCA 2008). The E/C concedes that Claimant properly requested a one-time change; thus, he is entitled to the one-time change he requested. We distinguish Falcon Farms v. Espinoza, 79 So. 3d 945 (Fla. 1st DCA 2012), where this court reversed the award

8

of a one-time change, because in <u>Falcon Farms</u> there was no work-related injury at all, only a finding that the claimant "presented no 'persuasive medical evidence' that an injury arose out of employment," which was not challenged on appeal. 79 So. 3d at 946.

For the foregoing reasons, we reverse the order on appeal, and remand to the JCC for the award of a one-time change under section 440.13(2)(f).

REVERSED and REMANDED with instructions.

WOLF, BENTON, and RAY, JJ., CONCUR.